UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ALTAGRACIA SANCHEZ, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 18-975 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION, *et al.*, | : : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

## I. INTRODUCTION

In 2016, the D.C. Office of the State Superintendent of Education ("OSSE") issued regulations that imposed minimum education requirements for certain childcare providers in Washington. Plaintiffs in this case promptly filed suit challenging those requirements, but the Court dismissed their complaint based on an unusual combination of standing, ripeness, and mootness problems. Presently before the Court is Plaintiffs' motion for leave to file an amended complaint. For the reasons provided below, the Court denies this motion, as the new complaint fails to cure the original's deficiencies.

## II. BACKGROUND

As the Court explained in greater detail in its previous opinion dismissing Plaintiffs' complaint, OSSE is the state education agency for the District of Columbia and is "authorized to 'formulate and promulgate rules necessary to carry out its functions.'" *Sanchez v. Office of State Superintendent of Educ. (Sanchez I)*, Civ. No. 18-975, 2019 WL 935330, at *1 (D.D.C. Feb. 26, 2019) (quoting D.C. Code § 38-2602(b)(11)); *see also* D.C. Code § 38-2601.01. That authority

includes the power to regulate "staff qualification[s]" at any "child development facility," D.C. Code § 38-2602(b)(11) —defined as a "center, home, or other structure that provides care and other services, supervision, and guidance for children, infants, and toddlers on a regular basis" but that is not "a public or private elementary or secondary school engaged in legally required educational and related functions or a pre-kindergarten education program," *id.* § 7-2031(3). *See id.* § 7-2036(a)(1)(A) (delegating regulatory power to Mayor); Mayor's Order 2009-130, 56 D.C. Reg. 6883 (July 16, 2009) (Mayor delegating power to OSSE).

In December 2016, OSSE issued regulations that set minimum education requirements for staff at these child development facilities. *See generally* 63 D.C. Reg. 14,640–14,813 (Dec. 2, 2016). Most of the requirements did not take immediate effect, however. Depending on the position, the regulations built in a grace period of anywhere between three and six years before the requirements became binding. *See, e.g.*, 63 D.C. Reg. 14,786, 14,799 (original versions of D.C. Mun. Regs. tit. 5-A1, §§ 164.1(b), (c) and 170.2(a)(1)(2)). The regulations also permitted OSSE to grant two different kinds of waivers. First, certain types of staff positions—although not all—would be eligible for experience waivers, available to individuals who had "continuously served" in the relevant position for ten or more years as of December 2016. *E.g.*, D.C. Mun. Regs. tit. 5A-1 §§ 164.3, 165.4. Second, hardship waivers could be granted if (1) "[t]he demonstrated . . . economic impact or hardship on the Facility or staff member [was] sufficiently great to make immediate compliance impractical despite diligent efforts;" (2) "[t]he [f]acility or staff member [was] meeting or exceeding the intent of the regulation for which the waiver [was] requested;" and (3) "[t]he health and welfare of staff and children [we]re not jeopardized." *Id.* § 106.1.

Two of the three Plaintiffs in this case hold childcare development facility staff positions that are covered by the OSSE regulations. Altagracia Sanchez has operated a licensed daycare out of her house since 2006, which currently cares for nine children. Am. Compl. ¶¶ 161–63, ECF No. 15-2. According to the regulations, this makes her an "expanded home caregiver," required to hold "an associate's or more advanced degree . . . with a major in early childhood education, early childhood development, child and family studies or a closely related field." D.C. Mun. Regs. tit. 5-A1, § 170.2(a). When the regulations first went into effect, expanded home caregivers had until December 2, 2019 to earn the requisite degree, and they were not eligible for experience waivers. *See* 63 D.C. Reg. 14,799 (original version of D.C. Mun. Regs. tit. 5-A1, § 170.2). But in June 2018, after Plaintiffs filed their original complaint, OSSE amended the regulations—extending the grace period for expanded home caregivers to December 2, 2023 and making experience waivers available to those that were otherwise eligible. *See* D.C. Mun. Regs. tit. 5-A1, § 170.2(a), (c); 65 D.C. Reg. 7034–7036 (June 29, 2018).

The second Plaintiff, Dale Sorcher, is what the regulations call a "teacher in a child development center." *See* D.C. Mun. Regs. tit. 5A-1, § 165. She works with children up to age three at a licensed daycare center associated with a Jewish preschool. Am. Compl. ¶¶ 192–95. Sorcher already has a bachelor's degree and two master's degrees, but none of them are in a field related to early childhood, and she does not have the requisite experience for an experience waiver. *See id.* ¶¶ 192, 201. As a result, the regulations require her to either seek a hardship waiver or obtain twenty-four college credit hours related to early childhood. D.C. Mun. Regs. tit. 5-A1, §§ 165.1(b), 165.4. When the regulations were first issued, Sorcher had until December 2, 2020 to earn the credits, *see* 63 D.C. Reg. 14,791 (original version of D.C. Mun.

Regs. tit. 5-A1, § 165.1), but after the June 2018 amendments, she now has until December 2, 2023, *see* D.C. Mun. Regs. tit. 5-A1, § 165.1.

Unlike Sanchez and Sorcher, the third Plaintiff, Jill Homan, does not work at a child development facility and is not subject to the OSSE regulations. Instead, Homan and her partner have two young children and use a daycare center in D.C. where the staff members will need to meet the new education requirements. *See* Am. Compl. ¶¶ 233–236. She is concerned "that daycare providers who are exhausted, stressed, and overwhelmed by having to attend college, work full time, and care for their own families" will either "provide worse care than those who do not have to worry about attending school," *id.* ¶ 251, or simply leave their jobs altogether, *see id.* ¶ 248.

In both their original complaint and their proposed amended one, Plaintiffs raise three challenges to the OSSE regulations: (1) they allege that the education requirements exceed the authority lawfully delegated to OSSE; (2) they claim that the requirements violate their Fifth Amendment substantive due process rights to pursue honest livings and make reasonable childcare choices; and (3) they say that the regulations draw "arbitrary and irrational" distinctions between childcare providers, in violation of the Fifth Amendment's guarantee of equal protection. Am. Compl. ¶¶ 264–89. But in dismissing the original complaint, the Court never reached the merits of these claims. It instead concluded that the claims were not justiciable as asserted by any of the three Plaintiffs. Homan, the Court held, lacked standing because the injuries that she alleged were based on conjecture and could not be traced to the OSSE regulations. *See Sanchez I*, 2019 WL 935330, at *6. Sanchez's claims were either moot or unripe because, in light of the June 2018 amendments, she was eligible for an experience

waiver but had not yet applied. *Id.* at *8. And Sorcher's claims were unripe because she had until December 2023 to seek a hardship waiver, for which she had not yet applied. *Id.*

Plaintiffs now argue that their proposed amended complaint solves the problems that the Court previously identified. The new complaint alleges that Homan's daycare center has "become more expensive under the college requirement," Am. Compl. ¶ 252, and that staff members have now begun to leave to avoid having to comply with the requirement, *see id.* ¶¶ 249–50. Sorcher, the proposed amended complaint says, is not interested in seeking a hardship waiver because, even if one were granted, it would only apply to her current employer; she wants "the freedom to work anywhere in the child-care field for anyone." *Id.* ¶ 218; *see also id.* ¶¶ 215–17. Finally, Sanchez, the proposed amended complaint clarifies, has been granted an experience waiver, meaning she no longer has to comply with the education requirement. *Id.* ¶¶ 189–91; *see also* Pls.' Reply Supp. Mot. Am. Compl. at 5, ECF No. 9. But according to Plaintiffs, this does not moot Sanchez's claims because she will have to apply to renew her waiver in three years, and because she continues to seek nominal damages. Unsurprisingly, Defendants—OSSE and the District of Columbia itself—oppose Plaintiffs' motion for leave to amend. They argue that all of Plaintiffs' claims remain non-justiciable for the same reasons provided in the Court's decision dismissing the original complaint.

### III. ANALYSIS

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). But that "[g]enerous standard notwithstanding, courts may deny leave to amend for such reasons as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

5

of allowance of the amendment, [or] futility of amendment." *Connecticut v. U.S. Dep't of Interior*, 363 F. Supp. 3d 45, 54 (D.D.C. 2019) (second alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This case concerns only futility, which is an appropriate basis to deny leave "if the proposed claim[s] would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

Thus, in reviewing Plaintiffs' motion, "the Court is required to assume the truth of the allegations in the amended complaint and construe them in the light most favorable to the movant." *Flaherty v. Pritzker*, 322 F.R.D. 44, 46 (D.D.C. 2017) (citing *Caribbean Broad. Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)). The Court need not, however, "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44 (D.D.C. 2017) (quoting *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001)). And because here the deficiencies with the previous complaint went to subject matter jurisdiction, the allegations "bear closer scrutiny" than they would in resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Bennett v. Ridge*, 321 F. Supp. 2d 49, 52 (D.D.C. 2004) (internal quotation marks omitted) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)). With these principles in mind, the Court addresses each of the three Plaintiffs in turn.

### A. Homan

The Court begins with Homan, whose claims it previously dismissed for lack of standing. To establish standing, plaintiffs must "clearly . . . allege facts demonstrating" three elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (omission in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). First, "they must have suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *N.B. ex*

*rel. Peacock v. District of Columbia*, 682 F.3d 77, 81 (D.C. Cir. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Second, that injury must be "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 136 S. Ct. at 1547. And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

In its prior opinion, the Court concluded that Homan had not satisfied any of these three elements. With respect to the first, the Court explained that "crediting any one of Homan's claims of injury require[d] a great deal of speculation—speculation that her childcare providers [would] not be able to earn the [required college] credits; speculation that those providers [would] become tired and stressed and consequently provide worse care; or speculation that her chosen daycare center [would] choose to raise its prices as a result of the regulations." *Sanchez I*, 2019 WL 935330, at *6. And as for the second and third elements, the Court explained that "even if Homan's claimed injuries were to occur," there would be no way of knowing "whether they were caused by the OSEE regulations so as to be redressable by injunctive relief." *Id.*

The proposed amended complaint now asserts slightly more specific factual allegations, but it suffers from largely the same problems. As an initial matter, the revisions are limited: on top of what was already said in the original complaint, the new complaint adds solely the allegations that Homan's daycare center has in fact now raised its prices, *see* Am. Compl. ¶ 240, and that childcare providers at the center have begun to leave due to the education requirements, including "two of . . . Homan's favorite teachers," *see id.* ¶ 249; *see also id.* ¶ 250. These allegations eliminate some of the speculation necessary with the original complaint, but significant conjecture remains necessary. Homan still, for instance, has not alleged facts that

7

show how the staff departures have resulted in worse care for her children.  Thus, even assuming the staff departures were caused by the OSSE regulations, the Court is unable to conclude that they have inflicted a particularized injury on Homan that satisfies the first standing element.

The price increase allegation, meanwhile, is more concrete, but Homan has not alleged specific facts that satisfy the causation or redressability requirements.  Proving those latter two elements is "considerably harder" for Homan than the typical litigant because her injury claims rely on the "action[s] of unrelated third parties" who are not before the Court.  *Abdulhawa v. U.S. Dep't of Treasury*, 239 F. Supp. 3d 24, 35 (D.D.C. 2017) (alteration in original) (quoting *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015)).  Indeed, Homan must present "substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress."  *Arpaio*, 797 F.3d at 20 (quoting *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004)); *see also Sanchez I*, 2019 WL 935330, at *5 ("In those cases where third-party choices are central, 'it becomes the burden of the plaintiff to adduce facts showing those choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" (quoting *Defenders of Wildlife*, 504 U.S. at 562)).

Homan has not alleged such facts in the proposed amended complaint.  She merely says that prices have gone up at her daycare center and that she is "worr[ied] that [it] will continue to become more expensive under the college requirement."  Am. Compl. ¶ 252.  She has asserted no facts, however, on which the Court can infer that the OSSE regulations caused the price increase.  The Court has no way of knowing, then, whether an injunction would lead the daycare to lower its prices—or even prevent it from raising prices further in the future.  Homan therefore

has not made the requisite showings for causation or redressability. She continues to lack standing.

### B. Sanchez

The Court turns next to Sanchez, whose claims it previously dismissed as either moot or unripe. Because she subsequently received an experience waiver, her claims are now clearly moot. As the Court explained in its prior opinion, mootness "occurs when the issues presented in a case are no longer live or the parties lack a legally cognizable interest in the outcome." *Sanchez I*, 2019 WL 935330, at *4 (internal quotation marks omitted) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)). "This occurs when, among other things, the court can provide no effective remedy because a party has already 'obtained all the relief that [it has] sought.'" *Conservation Force*, 733 F.3d at 1204 (alteration in original) (quoting *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C. Cir. 1984)).

Sanchez has obtained all of the relief that she sought here. Having acquired an experience waiver, she suffered no injury as a result of the OSSE regulations, and an order enjoining the regulations' enforcement is unnecessary. *See* Am. Compl. at 42 (requesting "permanent injunction enjoining Defendants and their officers, employees, or agents from implementing, applying, or taking any action whatsoever pursuant" to the regulations). Sanchez contends that her claims are not moot because her waiver is revocable and will need to be renewed in three years. But Sanchez has alleged no facts that cast doubt on her ability to renew her waiver when that time comes. Indeed, if she obtained an experience waiver now, she will have even more experience when she seeks a renewal. Thus, "it seems a 'merely hypothetical possibilit[y]'" that she will ever be "subject to the education requirements." *Sanchez I*, 2019 WL 935330, at *7 (alteration in original) (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 644 (D.C.

Cir. 2011)). "That hypothetical possibility is not enough to preserve a live case or controversy before this Court." *Id.*

Sanchez also argues that her claims are not moot because she has requested an award of nominal damages in the amount of one dollar. *See* Pls.' Reply at 5; Am. Compl. at 42. Circuits are split on whether such a request, in and of itself, prevents mootness, and neither the Supreme Court nor the D.C. Circuit has weighed in definitively. *Compare Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1267 (11th Cir. 2017) (en banc) ("[A] prayer for nominal damages cannot save an otherwise moot case."), *with, e.g.*, *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 (5th Cir. 2009) ("This court and others have consistently held that a claim for nominal damages avoids mootness."); *see also People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 421 (D.C. Cir. 2005) ("We assume, without deciding, that a district court's award of nominal damages—$1—prevents a case from becoming moot on appeal.").

This Court need not reach the issue here, however, because Sanchez has failed to state a valid claim for nominal damages. "[N]ominal damages 'are not compensation for loss or injury, but rather recognition of a violation of rights.'" *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (quoting *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir. 1983)); *see also Abrams v. Commc'ns Workers of Am., AFL-CIO*, 23 F. Supp. 2d 47, 51 (D.D.C. 1998) ("The term nominal damages means a trivial sum—usually one cent or one dollar—awarded to a plaintiff whose legal right has been technically violated but who has proved no real [pecuniary] damage." (alteration in original) (quoting *Chesapeake & Potomac Tel. Co. v. Clay*, 194 F.2d 888, 890 (D.C. Cir. 1952))). In this case, Sanchez's rights were never violated because she was never subject to the OSSE regulations. Rather, she brought suit to prevent what she believed was an imminent threat

to her rights—a violation that would occur when the regulations went into effect and she was required to possess a college degree. But as Sanchez herself appears to recognize, that violation never came to pass because of the long grace period and her ability to obtain a waiver years in advance. Indeed, in arguing that she is entitled to nominal damages, Sanchez says that the "college requirement has already injured her," but she never identifies how any legal right was infringed by the mere issuance of the regulations or by the waiver requirement itself. Pl.'s Reply at 5 (emphasis omitted). Instead, Sanchez focuses on the "time it took [her] to put together her application for an experience waiver." *Id.* "She seeks," in her own words, "retrospective relief in the form of nominal damages to compensate for" the hours that she spent. *Id.* (quoting Am. Compl. ¶ 256).

As the Court said above, though, "nominal damages are divorced from any compensatory purpose." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017). They "are awarded to vindicate rights" that have been infringed in the past. *Id.* (quoting *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005)). Because Sanchez has drawn no nexus between the time she purportedly spent on the waiver and any legally protected right, she has not shown that nominal damages are warranted. Nominal damages thus would not save her claims from mootness.

### C. Sorcher

Finally, the Court turns to Sorcher, whose claims were previously dismissed as unripe. The ripeness doctrine, the Court explained in its prior opinion, counsels "against 'premature adjudication.'" *Sanchez I*, 2019 WL 935330, at *3 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)). It is "meant 'to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect . . .

11

agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08).

"[W]hether a case is ripe hinges on a 'two-pronged test . . . that first considers the "fitness of the issues" for judicial decision and then looks at any hardship that would befall the parties if the court withheld consideration." *Id.* at *7 (quoting *Kaufman v. Nielsen*, 896 F.3d 475, 484 (D.C. Cir. 2018)). In its prior opinion, the Court concluded that Sorcher failed both prongs of that test because the extended December 2023 deadline to meet the requirements gave her a lot of time to seek a hardship waiver. The availability of hardship waivers, the Court reasoned, could "have a bearing on the merits of some of Plaintiffs' claims," as the merits of those claims would "depend on who actually, in practice, ha[d] to meet the education requirements." *Id.* at *8. In other words, "absent more information about hardship waivers . . . the issues [were] not yet fit for judicial decision." *Id.* And because a hardship waiver represented another "avenue[] of relief potentially available to [Sorcher] outside of the judicial process," any hardship inflicted on her would be minimal. *Id.* at *9.

The proposed amended complaint does not change those conclusions. As was the case with Homan, Sorcher's revisions are minimal. The new complaint clarifies that "day-care facility employees cannot apply directly for hardship . . . waivers for themselves." Am. Compl. ¶ 73. "Instead, day-care facility directors or administrators apply for hardship or experience waivers that apply to the *facilities*, not to individual workers." *Id.* ¶ 74. According to Sorcher, she does not wish "to ask her current employer to apply for a hardship waiver on her behalf, because if she leaves her job, her waiver would not follow her." *Id.* ¶ 215. "Sorcher does not want a hardship waiver that lets her work solely in one position with one employer for the rest of

12

her career." *Id.* ¶ 217. "Instead, she seeks the freedom to work anywhere in the child-care field for anyone." *Id.* ¶ 218.

Contrary to Sorcher's assertion, however, a hardship waiver would not impair her freedom to work elsewhere. Indeed, as the proposed amended complaint acknowledges, if she wanted to change jobs some time down the road and her new position was subject to the OSSE regulations, she could have her new employer seek a waiver on her behalf. *See id.* ¶ 75. And of course, whether Sorcher would ever need to obtain a second hardship waiver for a new position is speculative. The premature adjudication of such hypothetical possibilities is exactly what the ripeness doctrine is intended to prevent.

As for Sorcher's current employer, the proposed amended complaint suggests that it has not applied for a hardship waiver yet. Things might be different if Sorcher had requested that her employer apply and the employer had refused, but Sorcher admits that she has not even asked, *see id.* ¶ 215, even though waiver forms are now available online, *see id.* ¶ 72. Meanwhile, Sorcher does not claim that she must imminently begin taking classes in order to to meet the education requirement by December 2023. She merely alleges that she has spent time researching various program options. *See id.* ¶¶ 220–24. This effort, she says, "has been exhausting, and she would like to stop." *Id.* ¶ 225.

That is not enough to overcome the ripeness issues that the Court identified in its prior opinion, though. Without more, the state of the affairs is the same as it was then: "Sorcher [has] other avenues of relief potentially available . . . outside of the judicial process," and she has not alleged that she must "enroll in courses before the waiver applications become available." *Sanchez I*, 2019 WL 935330, at *9. The Court again concludes that "deferring review" until Sorcher has an opportunity to pursue a waiver "will allow many of the issues raised 'to take on a

more definite form.'" *Id.* at *8 (quoting *Kaufman*, 896 F.3d at 483). Sorcher's claims thus continue to be unripe.

IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend their complaint is **DENIED** because amendment would be futile.[1] An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 8, 2019                                             RUDOLPH CONTRERAS
                                                                United States District Judge

---

[1] In the alternative, Plaintiffs ask the Court to alter or amend its prior order under Rule 59)(e) "to clarify the status of all claims." Pls.' Mem. Supp. Mot. Am. Compl. at 7, ECF No. 25-1. If clarity is all that Plaintiffs seek, the Court would simply point them to its prior opinion. The conclusion of that opinion said that the "complaint" was dismissed without prejudice. *Sanchez I*, 2019 WL 935330, at *9. Because Defendants had sought prejudicial dismissal, the Court granted their motion to dismiss "in part." Plaintiffs seem to now argue that their non-delegation claim could remain justiciable, but the Court already rejected that contention in the prior opinion. The Court explained that "the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once." *Id.* at *3 (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012)). Because "proceeding . . . in a piecemeal fashion" would undermine that purpose, the Court explained that it was "appropriate to reserve judgment on *all* of Plaintiffs' claims until it ha[d] more facts." *Id.* at *8 (emphasis added). For the reasons provided above, that conclusion remains true now with respect to the proposed amended complaint. To the extent that Plaintiffs seek more than clarity under Rule 59(e), they have come nowhere near showing that such "extraordinary relief" is warranted. *Slate v. Am. Broad. Cos., Inc.*, 12 F. Supp. 3d 30, 34 (D.D.C. 2013). Indeed, Plaintiffs have failed to identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (quoting *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006)). Thus, Plaintiffs' motion to alter or amend the judgment is also **DENIED**.